UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAUL CASADABAN | CIVIL ACTION NO.: |
| v. | |
| METAIRIE PARK COUNTRY DAY SCHOOL, (A LOUISIANA NON-PROFIT CORPORATION) AND ABC INSURANCE COMPANY | SECTION: |

# COMPLAINT

NOW INTO COURT, through undersigned counsel, comes plaintiff Paul Casadaban, who hereby files this Complaint against defendants Metairie Park Country Day School ("Country Day"), ABC Insurance Company, and in support thereof asserts the following facts and allegations:

**1.**

Plaintiff Paul Casadaban ("Casadaban") is of the age of majority and a resident of Metairie, Jefferson Parish, State of Louisiana.

**2.**

Defendant Country Day is a non-profit corporation and organized under the laws of the State of Louisiana. Country Day is located in Metairie, Jefferson Parish, State of Louisiana.

**3.**

Defendant ABC Insurance Company, as insurer for all defendants, had in full force and effect insurance coverage for all misconduct and acts and/or commission alleged in this Complaint.

## JURISDICTION

**1.**

This Complaint seeks, *inter alia,* damages for retaliation pursuant to Title VII, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), the Federal Labor Standards Act ("FLSA") is 29 U.S.C.. § 215(a)(3), and Employee Retirement Income Security Program, 29 U.S.C. § 1140 ("ERISA).

**2.**

This Court has jurisdiction over the plaintiff's claims asserted by Casadaban in this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## VENUE

The misconduct, and acts or omissions, giving rise to the Casadaban's claims arose and occurred in Jefferson Parish. Therefore, venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

Plaintiff Casadaban was hired in March of 2018 as a Human Resource Director at Country Day. Casadaban received notice from Country Day on March 12, 2020 that he was terminated, and that such termination would take effect on July 1, 2020. Casadaban was terminated because he complained to Bonnie LaGraize ("LaGraize"), Country Day's Chief Financial Officer and Casadaban's supervisor, about: (1) illegal and non-compliant hiring practices at Country Day; (2) about perceived violations of the FLSA; and (3) about perceived violations of ERISA.

LaGraize illegally orchestrated the hiring of Jesse Morrell ("Morrell") for the Controller position. Morrell is a former co-worker and personal friend of LaGraize. LaGraize arranged the hiring committee, which consisted of LaGraize, Kelly Lanclos (the Business Manager at Country

Day School and also the direct subordinate of LaGraize, and Julie Bordes, Public Relations Director for the Country Day School). Prior to the hiring process commencing, Lanclos advised Casadaban that LaGraize wanted to hire Morrell. Lanclos further advised that LaGraize and Lanclos came to an illicit *quid pro quo* agreement under which LaGraize would allow Lanclos the opportunity to work only 4 days per week in exchange for Lanclos supporting the hiring of Morrell in her capacity as a hiring committee member.

Casadaban raised concerns and objections to Lanclos, Bordes, and LaGraize about Morrell being hired under these circumstances and being considered the best qualified candidate for the Controller position. Morrell had an undergraduate degree in anthropology and had just recently earned a Master of Business Administration degree. Morrell's resume also listed four years of experience as the Human Resources Manager and several years of experience as the Executive Assistant to the Headmistress both at the Louise S. McGehee School as well as being an administrative assistant in the alumni affairs' office at Loyola University.

As Country Day School's Human Resources Manager, Casadaban evaluated Morrell's experience and qualifications as significantly lacking such that Morrell failed to meet even the minimum qualifications for the position as listed in the Controller job ad. Casadaban pointed out to the hiring committee his evaluation that Morrell lacked a bachelor's degree in accounting or related field as well as the 5 years of experience in accounting both listed as required minimum qualifications in the Controller job ad. Acting in the best interests of Country Day School and as the HR Manager/Director, Casadaban explicitly shared his view and complaints to the hiring committee that Morrell was grossly unqualified for the Controller position and that such a hiring was unethical, contrary to best practices and school policy, and illegally discriminatory potentially based on Morrell's race, gender, and/or pay under Title VII and/or the FLSA (as

amended by the Equal Pay Act of 1963), among other laws thereby potentially exposing the school to legal liability on many levels. Nevertheless, Morrell was hired at a salary of approximately $18,000.00 higher than the prior retiring Controller who had been employed by Country Day for over 15 years. Country Day, through LaGraize, rejected several individuals who were, in fact, Certified Public Accountants with considerable years of relevant accounting experience.

After this, the working relationship between Casadaban and LaGraize deteriorated as she became distant and curt with Casadaban, thus creating a hostile work environment for Casadaban. Casadaban maintains that "[o]ther acts to oppose discrimination are protected as long as the employee was acting on a reasonable belief that something in the workplace may violate EEOC laws, even if he or she did not use legal terminology to describe it." Casadaban further maintains that he opposed the unlawful employment practices as described herein and Country Day subjected him to an adverse employment action, which is terminating his employment because of his opposition to these unlawful employment practices which would not have occurred but for that opposition.

As Casadaban's supervisor, LaGraize recommended to Matt Neely, the Head of School and Country Day's Board of Trustees, that Casadaban be terminated. Such recommendations are heavily relied upon by the Head of School and the Board of Trustees. LaGraize's recommendation was followed by the Head of School and/or the Board of Trustees.

## CLAIMS FOR RELIEF

### Title VII, 42 U.S.C. § 2000e, *et seq*. ("Title VII")

**1.**

Plaintiff Casadaban re-alleges and incorporates by reference all paragraphs set forth in this Complaint, above, as though fully set forth here.

**2.**

In order to state a claim for retaliation under Title VII, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) an adverse employment action occurred; and (3) there is a causal link between the protected activity and the adverse employment action. For a complaint to constituted protected activity, the employee making the complaint must have a reasonable belief that the actions complained of violated Title VII.

Plaintiff Casadaban has made a *prima facie* case for retaliatory termination under Title VII. First, Casadaban engaged in protected activity inasmuch as he exercised his freedom of speech that is constitutionally protected under the First and Fourteenth Amendment to the United States Constitution. As Human Resource Director at Country Day, he exercised that right repeatedly to the appropriate superiors and staff members. Casadaban had every right to complain, and he did so, and he had an obligation to do so. Casadaban, who has a law degree, most had a "reasonable belief" that the actions of which he is complaining violated Title VII as retaliatory termination.

Second, an adverse employment was taken against Casadaban because he complained about illicit and unethical practices at the hands of Country Day and its employees.

Third, there was a direct causal link between the protected activity and the adverse employment decision. Mr. Casadaban made legitimate complaints about the ongoings at

Country Day several months prior to his being given notice that he was terminated and continuously thereafter. Country Day and its staff were unhappy with Mr. Casadaban's legitimate complaints, which Country Day intentionally and/or negligently failed to act on. In sum, Country Day concocted a pretextual excuse to end Mr. Casadaban's employment. Accordingly, the actions of Country Day and its staff were a direct cause of Mr. Casadaban's retaliatory termination under Title VII.

On February 11, 2022, the EEOC returned a finding that it declined to pursue any further investigation and made no determination about whether further investigation would establish violations of the statute and issued a right to sue letter (*See* Exhibit A). The EEOC did not return a finding that Casadaban's Complaint/Charge was untimely.

**Retaliation Under the Federal Labor Standards Act, 29 U.S.C. § 215(a)(3)**

**1.**

Plaintiff Casadaban re-alleges and incorporates by reference all paragraphs set forth in this Complaint, above, as though fully set forth here.

**2.**

The applicable provision in the Federal Labor Standards Act ("FLSA") is 29 U.S.C.. § 215(a)(3), which, in pertinent part, provides:

> (a) . . . [I]t shall be unlawful for any person --
>
> \*\*\*
>
> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or has served or is about to serve on an industry committee.

*Id*.

Plaintiff Casadaban verbally complained to LaGraize and Lanclos that several activities were in violation of the FLSA. These include the failure of Country Day School to record and track the daily hours worked of many FLSA nonexempt employees. In another matter, Casadaban made LaGraize aware that a multi-employee sign in sheet being used as a pay period timesheet was hastily forged by a single employee seeking to have it submitted in time to meet a payroll deadline. Casadaban complained to LaGraize after she knowingly permitted and relied upon the invalid timesheet for payroll purposes. Casadaban advised LaGraize that in his opinion, Country Day had also misclassified multiple employees as FLSA exempt who were nonexempt. Despite Casadaban raising complaints and objections about these illegal practices to LaGraize, she would not allow Casadaban to properly classify employees in the school's systems of record because she and Lanclos (Business Manager) had unresolved matters impacting the payroll system and process that needed to be resolved first before classification changes could be implemented. LaGraize had advised Casadaban that she had been aware of the misclassification issues for quite a while. After additional time had passed, Casadaban complained to LaGraize about his inability to move forward with properly classifying employees and the illegality of permitting ongoing misclassification. This resulted in deterioration of the relationship with LaGraize ultimately culminating in the retaliatory termination of Casadaban. Casadaban also discovered and raised concerns and objections to LaGraize about Lanclos improperly overpaying employees overtime pay for many years by Lanclos' own admission. Casadaban's complaints about misclassification of employees under the FLSA, the associated forged time sheet issues, and the failure to properly track the hours of nonexempt employees continued through his date of termination. LaGraize was made aware of the foregoing problems and was bothered by Casadaban's persistent and consistent complaints about Country's Day's lack of legal

compliance. Thus and as a result of Casadaban's commitment to professionalism in his role as HR Director and commitment to compliance with the provisions of the FLSA, his complaints about these illegal and unethical practices made him an unpopular employee with LaGraize and Lanclos. As a result, LaGraize engaged in illegal retaliation by using her extremely influential position as CFO to orchestrate the elimination of Casadaban's position in violation of the non-retaliation provisions of the FLSA.

The analysis under VII is identical to actions under FLSA. A plaintiff establishes a *prima facie* case of retaliation under the FLSA by showing: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.

Casadaban clearly engaged in protected activity by making specific complaints about specific FLSA violations of which Country Day, through LaGraize and others, were aware. Moreover, the adverse actions that ensued and which are described herein, lead to the inescapable conclusions that retaliation individually, as well as when they are viewed collectively as a whole with the other illegal and unethical actions as described herein under FLSA, ERISA, VII clearly constitutes actionable claims for retaliation.

**Retaliation Under Employee Retirement Income Security Program, 29 U.S.C. § 1140 ("ERISA)**

**1.**

Plaintiff Casadaban re-alleges and incorporates by reference all paragraphs set forth in this Complaint, above, as though fully set forth here.

**2.**

The applicable retaliation provision of ERISA is set forth at 29 U.S.C. § 1140. Section

1140, in pertinent part, provides:

> \*\*\*
>
> It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act.

*Id*.

Plaintiff Casadaban raised concerns and objections to LaGraize's knowingly applying Country Day's retirement plan improperly to those employees who were eligible for the employer match of funds. Employees who were technically eligible to receive the match were denied this opportunity and benefit. Casadaban raised additional concerns that part time and other employees were not being allowed to participate in the retirement plan despite the plan document providing for their eligibility to do so. Against his objections, Casadaban was directed to LaGraize and Country Day's ERISA attorney who appeared to Casadaban to suggest that these practices were not in compliance with the retirement plan document. Casadaban's complaints about this improper handling of the retirement plan also led to his retaliatory termination. Country Day's actions clearly arise to a level of retaliatory termination under 29 U.S.C. § 1140.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Paul Casadaban respectfully requests the following relief:

1. Compensatory damages against each defendant, jointly and severally, in an amount to be proven at trial;

2. A jury trial;

3. Punitive, exemplary, and liquidated damages against each individual defendant in an amount appropriate to punish each individual defendant and deter others from engaging in similar misconduct;

4. Court costs;

Reasonable attorney's fees as otherwise authorized by statute or law;

6. Pre-judgment and post judgment interest; and

7. Such other relief, including injunctive and/or declaratory relief, as the court may deem proper.

                                          Respectfully submitted;

/s/ *Stephen H. Shapiro*_____
STEPHEN H. SHAPIRO (#21076)
Attorney at Law
A Limited Liability Company
700 Camp Street
New Orleans, LA 70130
Telephone: (504) 309-8442
E-mail:  steve@shapirolaw-nola.com

**Counsel for Paul Casadaban**

\*\* **Service of Process to be Made Via Waiver of Service of Complaint and Citation** \*\*